IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Madlyn Evans, et al., | : | Case No. 1:08-cv-180 |
| | : | |
| Plaintiffs, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING MOTION FOR |
| | : | SEVERANCE AND GRANTING IN |
| Midland Funding LLC, et al., | : | PART AND DENYING IN PART |
| | : | MOTION FOR JUDGMENT ON THE |
| Defendants. | : | PLEADINGS |
| | : | |

This matter is before the Court on Defendants' Motion for Severance of Misjoined

Claims of Plaintiff Evans and Plaintiff Faulk (doc. 10) and Defendants' Motion for Judgment on

the Pleadings (doc. 9).  For the reasons that follow, the Motion for Severance is **DENIED** and

the Motion for Judgment is **GRANTED IN PART AND DENIED IN PART.**

I.        BACKGROUND

Plaintiffs Madlyn Evans and Howard Faulk filed a Complaint (doc. 4) on March 20, 2008

against Defendants Midland Funding, LLC ("Midland"), MRC Receivables ("MRC"), the law

firm of Javitch, Block & Rathbone, LLP ("the Javitch law firm"), and attorneys Brian C. Block,

John S. Shelley, and Sara Ritz of the Javitch law firm.  Plaintiffs allege violations of the Fair

Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Ohio Consumer

Sales Practices Act ("OCSPA"), Ohio Revised Code ("O.R.C.") § 1345.01, et seq.  Plaintiffs

allege that Midland and MRC are California corporations engaged in the business of collecting

debts in Ohio and that the Javitch law firm is an Ohio limited liability partnership engaged in the

business of collecting debts in Ohio.

1

**A.      Allegations Specific to Plaintiff Evans**

Evans alleges that MRC, as an assignee, filed a complaint against her and Elwood Evans

in the Hamilton County, Ohio Municipal Court "for money loaned."  (Doc. 4-2.)  The complaint

was signed by Block and Shelly as attorneys for the Javitch law firm.  The state court complaint

named First USA Bank as the original creditor.  It stated that MRC had acquired "all right, title

and interest" in and was entitled to "recover the amount loaned to Defendant(s) on a credit card

number xxxx-xxxx-xxxx-4398."  (Id.)  The state court complaint further stated that "[t]here is

presently due the Plaintiff from the Defendant(s) for the money loaned on defendant's charge

card, the sum of $2,565.76."  (Id.)  The state court complaint indicated that MRC had not

attached the account records to the complaint because, among other reasons, the records were not

in MRC's "possession, custody or control" and because "said account records may be

voluminous."  (Id.)

Plaintiff Evans in this suit alleges that the Javitch law firm and its attorneys knew that

MRC was not licensed with the State of Ohio and that it therefore lacked the capacity under

Ohio law to maintain a court action.  Plaintiff Evans also alleges that she was not obligated on

the First USA Bank account and that the bank knew that only Elwood Evans was obligated.

Evans asserts that MRC dismissed the state law complaint against her and Elwood Evans after

she filed a dismissal motion.  Evans asserts the following claims against Defendants:

- Violation of the FDCPA for mischaracterizing the alleged debt as a loan
  and the status of the creditor as analogous to a holder-in-due-course;

- Violation of the FDCPA for suing Evans on a nonexistent debt;

- Violation of the FDCPA for bringing the state court action despite
  knowing that MRC was not licensed in the state of Ohio; and

2

• Violation of the OCSPA for the above-stated conduct.

**B.  Allegations Specific to Plaintiff Faulk**

Faulk alleges that Midland filed a complaint "for money loaned" against him in the Hamilton County, Ohio Municipal Court on April 2, 2007.  (Doc. 4-2.)  The state law complaint was signed by attorneys Block and Ritz of the Javitch law firm.  (Id.)  The state court complaint named "First Consumer National B" as the original creditor and stated that Midland had acquired "all right, title and interest" in and was "entitled to recover the amount loaned to Defendant(s) on credit card number xxxx-xxxx-xxxx-4340."  (Id.)  The state court complaint further stated that "[t]here is presently due the Plaintiff [Midland] from the Defendant(s) [Faulk] for the money loaned on defendant's charge card, the sum of $3,345.98."  (Id.)  The state court complaint indicated that Midland had not attached the account records to the complaint because, among other reasons, the records were not in Midland's "possession, custody or control" and because "said account records may be voluminous."  (Id.)

Faulk asserts that at the time the state court complaint was filed any amount he may have owed to First Consumers National Bank had been discharged in bankruptcy in 1998.  Faulk asserts that Midland voluntarily dismissed the state court complaint when he pressured Midland to produce documents support its claim.  Faulk states the following claims against Defendants:

• Violation of the FDCPA for mischaracterizing the alleged debt as a loan and the status of the creditor as analogous to a holder-in-due-course; and

• Violation of the FDCPA for suing Faulk on a debt discharged in bankruptcy;

• Violation of the OCSPA for the above-stated conduct.

## II.     ANALYSIS

## A.     Motion for Severance

Defendants have moved to sever Plaintiff Evans' claims from Plaintiff Faulk's claims on

the basis of alleged misjoinder.  "The manner in which a trial court handles misjoinder lies

within that court's sound discretion."  Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674,

682 (6th Cir. 1988).  Federal Rule of Civil Procedure 20 provides:

> (1) Plaintiffs.  Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with
> respect to or arising out of the same transaction, occurrence, or series of
> transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.
>
> (2) Defendants.  Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the
> alternative with respect to or arising out of the same transaction, occurrence, or
> series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20.  Both sets of requirements — (A) same transaction or occurrence or series of

transactions and occurrences *and* (B) common question of law or fact — must be met for joinder

of either plaintiffs or defendants.  Charles Alan Wright, et al., 7 Fed. Pract. & Proc. Civ. 3rd

§ 1653 at 403-04 (2001).

The joinder standard is liberal.  "The purpose of Rule 20(a) is to promote judicial

economy and trial convenience."  Lee v. Dell Products, L.P., 3:06cv0001, 2006 WL 2981301, *7

(M.D. Tenn. Oct. 16, 2006).  The Supreme Court stated that joinder is "strongly encouraged"

and that "the impulse is toward entertaining the broadest possible scope of action consistent with

fairness to the parties."  United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1996).

The common question of law or fact requirement easily is met in this case.  One common

4

question of law is whether a complaint for money loaned arising from an unpaid credit card debt violates the FDCPA.  As to the second requirement, "[c]ourts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."  Wright, et al., 7 Fed. Pract. & Proc., Civ. 3rd § 1653 at 411-12 (2001).  The claims in this case arise from a series of transactions or occurrences in which the Javitch law firm filed substantially similar complaints for money loaned in Ohio state courts against Evans and Faulk to collect upon debts allegedly owed to corporations which share an address in California.  There is a likelihood of overlapping proof and testimony.  Accordingly, the Court will deny the Motion for Severance.[1]

**B.     Motion for Judgment on the Pleadings**

**1.     Legal Standards Governing Rule 12(c) Motions**

Defendants move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.  The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating Rule 12(b)(6) motion.  Lindsay v. Yates, 498 F.3d 434, 437 n.5 (6th Cir. 2007).  A district court "must read all well-pleaded allegations of the complaint as true."  Weiner v. Klais and Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  Bower v. Federal Express Corp., 96 F.3d 200, 203 (6th Cir. 1996).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

---

[1] The Court reserves the right to reconsider the issue of severance of claims or parties pursuant to Federal Rule of Civil Procedure 42(b) at an appropriate time.

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, --- U.S.----, 127 S.Ct. 1955, 1969 (2007).  To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  Id. at 1964-65.  The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner, 108 F.3d at 88.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1265.  The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face."  Id. at 1974.

### 2. Relevant FDCPA Provisions

Section 1692e of the FDCPA provides in relevant part as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(2) The false representation of--(A) the character, amount, or legal status of any debt; or

* * *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

* * *

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

15 U.S.C. § 1692e.

6

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.

**3.      Analysis**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); accord Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2003).  In determining whether any particular conduct violates the FDCPA, courts apply an objective test based on the least sophisticated consumer.  See Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 329 (6th Cir. 2006); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1029 (6th Cir. 1992).

> **A.      Did Defendants Violate the FDCPA — 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f — by mischaracterizing the alleged debt as a loan?**

Evans and Faulk allege that Defendants' conduct in representing the character of their respective alleged debts as "loans" in the state court complaints violated the FDCPA as a false, deceptive, misleading or unfair representation.  Defendants contend that the claim fails as a matter of law.  The parties agree that this precise issue, concerning a substantially similar state court complaint brought by the Javitch law firm against a different alleged debtor, is currently pending before the Sixth Circuit Court of Appeals in Miller v. Javitch, Block & Rathbone, No. 08-3336.

In the Miller case, the Honorable Judge Michael R. Barrett issued decisions in the District Court in favor of the Javitch law firm at both the pleadings and summary judgment

stages.  On the Rule 12(c) motion, Judge Barrett held that "the filing of an action for 'money loaned' by a credit card issuer or its successor to recover funds owed from a credit card holder" does not violate the FDCPA at 15 U.S.C. §§ 1692e(2)(A) or 1692e(10) insofar as it is not a false statement to characterize a credit card obligation as a loan.  Miller v. Javitch, Block & Rathbone, No. 1:06cv828, 2007 WL 2815452, *3-5 (S.D. Ohio Sept. 25, 2007).  This Court adopts Judge Barrett's well-reasoned analysis and likewise holds that the allegations in the state court complaints at issue here were not false insofar as they sought recovery "for money loaned." Accordingly, Defendants are entitled to judgment on the pleadings to the extent the Complaint alleges that Defendants violated 15 U.S.C. §§1692e and 1692e(2)(A) or 1692e(10) by falsely characterizing the alleged debts to be loans.

Nonetheless, Judge Barrett allowed to proceed Miller's claims that the complaint's characterization of the alleged debt was nonetheless misleading or deceptive in violation of 15 U.S.C. §§ 1692e and 1692e(10).  Miller, 2007 WL 2815452, at *5.  Literally true statements can be misleading or deceptive.  Id.  Judge Barrett held that whether the statements were misleading in Miller's case was a factual question that could not be resolved at the pleadings stage.  Id.

Subsequently, after discovery, Judge Barrett granted the defendants summary judgment on the claim that the state court complaint allegations were misleading in violation of 15 U.S.C. § 1692e.  Miller v. Javitch, Block & Rathbone, 534 F. Supp. 2d 772, 776-77 (S.D. Ohio 2008). Miller had presented no evidence except for her deposition testimony and her attorney's affidavit that the state court complaint language was misleading.  Id. at 776.  Judge Barrett posited that Miller might have established a genuine issue of material fact on the misleading nature of the statements with consumer survey evidence or expert testimony, but Miller offered neither.  Id.

8

In fact, Miller had admitted that she was not confused when she first read the state court complaint.  Id.  Judge Barrett then examined the state court complaint language using the least sophisticated consumer standard:

> Had the state court complaint stated only that it was a "complaint for money loaned" than this inquiry may very well have turned out differently.  However, it also stated "the owner of funds loaned on account number XXXX ..."; and "there is presently due the Plaintiff from the Defendant(s) on the money loaned on defendant's charge card debt ...".  Even the least sophisticated consumer would be able to know if the account number stated in the underlying complaint was one that belong to him or her.  In addition, the language specifically says "on defendant's charge card debt."  The least sophisticated consumer, with a careful reading of the entire state court complaint would understand that he or she was being sued for the collection of an unpaid credit card balance.  Based upon the above, the Court does not find these statements to be misleading.

Id. at 777.  Judge Barrett also determined that the defendants were entitled to the bona fide error defense pursuant to 15 U.S.C. § 1692k(c) as a matter of law, in part because Miller submitted no expert evidence to rebut the defendants' expert evidence on the defense.  Id. at 778.

Judge Barrett's decision at the summary judgment stage in the Miller case is not grounds to grant judgment on the pleadings to Defendants here.  Plaintiffs Evan and Faulk are entitled to discovery and the opportunity to establish with evidence (such as consumer survey evidence or expert testimony) that the language in the state court complaints regarding the status or type of debt was misleading.  Similarly, Plaintiffs are entitled to discovery and the opportunity to rebut with evidence Defendants' bona fide error defense.  Accordingly, the Court will not grant judgment on the pleadings to Defendants insofar as the Complaint alleges that Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) or 1692f with misleading or deceptive representations about the character of the alleged debts.

      **B.**     **Did Defendants Violate the FDCPA — 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692e(12), and 1692f — by misrepresenting**

**that Defendants had an analogous legal status to holders in due course?**

Evans and Faulk allege that Defendants falsely implied in the state court complaint that the creditors were analogous to holders-in-due course, another claim addressed in the <u>Miller</u> case.  Miller claimed that the defendants falsely implied that the creditor was a "holder in due course" in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(12) when they asserted in the state court complaint that the creditor had "acquired, for valuable consideration, all right, title, and interest" in the credit card debt.  <u>Miller</u>, 2007 WL 2815452, at *5.  Judge Barrett did not dismiss the claim at the pleadings stage because "a representation that a debt collector was a 'holder in due course' [is] a violation of 1692e(2) and (12) if the representation was, in fact, false and [if] there could be no bona fide error defense."  <u>Id.</u> (citing <u>Hartman v. Asset Acceptance Corp.</u>, 467 F. Suppp. 2d 769, 779 (S.D. Ohio 2004)).  Subsequently, Judge Barrett granted summary judgment to the defendants on the claim.  <u>Miller</u>, 534 F. Supp. 2d at 776.  Miller presented no evidence that the creditor did not, in fact, acquire for valuable consideration "all right, title, and interest" in Miller's credit card debt.  <u>Id.</u>  On the other hand, the defendants had "presented ample evidence that it did, in fact, purchase all right, title and interest in Miller's debt."  <u>Id.</u> Judge Barrett held that the statement was "not false and therefore, not a violation of 15 U.S.C. §§ 1692e(2) and 1692e(12)."  <u>Id.</u>

Similar to the procedure employed in the <u>Miller</u> case, this Court will permit Plaintiffs Evans and Faulk to prove their case that Defendants falsely or misleadingly implied that their respective creditors had acquired all rights, title, and interest in their alleged debts.  Defendants are denied judgment on the pleadings on this claim.

**C.     Did Defendants  violate the FDCPA — 15 U.S.C. §§ 1692e,**

**1692e(2)(A), 1692e(10), and 1692f — when they sued Evans on a non-existent debt?**

Evans asserts that the conduct of Defendants MRC, the Javitch law firm, and its attorneys, Block and Shelly, in suing her on a non-existent debt violated the FDCPA.  She asserts that the alleged debt was non-existent as to her because she was never obligated on the First USA Bank account identified in the state court complaint.  Defendants do not make a specific argument for the dismissal of this claim in their motion.  Defendants speculate in their reply brief that Evans might be liable on the account as an executor of Elwood Evans' estate or as a co-applicant on Elwood Evans' credit card account.  Defendants' speculation is not grounds to grant judgment on the pleading.  Defendants' dismissal motion is denied as to this claim.

**D.** **Did Defendants violate of the FDCPA — 15 U.S.C. §§ 1692e, 1692e(10), and 1692f — by bringing the state court action despite knowing that MRC was not licensed in the state of Ohio?**

Plaintiff Evans asserts that Defendants MRC, the Javitch law firm, and its attorneys, Shelley and Block, violated the FDCPA by bringing suit on behalf of Defendant MRC in state court despite knowing that MRC was not licensed in the State of Ohio.  The Court assumes for purposes of this motion the truth of the allegations that MRC is a corporation located in California with its principal place of business in California, that it is engaged in the business of collecting debts in this state, and that it is not licensed in the State of Ohio.  Plaintiffs rely on Ohio Revised Code ("O.R.C.") §§ 1703.03 and 1703.29 in arguing that they have stated a claim upon which relief can be granted.  The first section provides that "[n]o foreign corporation not excepted from sections 1703.01 to 1703.31 of the Revised Code shall transact business in this state unless it holds an unexpired and uncanceled license to do so issued by the secretary of state."  O.R.C. § 1703.03.  The second statute prohibits unlicensed foreign corporations from

11

"maintain[ing] any action in any court until it has obtained such license."  O.R.C. § 1703.29.

In rebuttal, Defendants assert that maintaining a court action should not be considered "transacting business" as that term is used in O.R.C. § 1703.03.  The term "transacting business" is not defined in O.R.C. Chapter 1703.  Defendants cite to O.R.C. Chapter 1776, which requires the licensing of a foreign limited liability partnership, and point out that its definition of "transacting business" specifically excludes maintaining a court action.  See O.R.C. § 1776.88(A)(1).  Defendants argue, therefore, that the term "transacting business" in Chapter 1703 also should be interpreted not to include maintaining a court action.  Defendants' argument is unavailing.  Regardless of the meaning of "transacting business" in § 1703.03, the plain language of § 1703.29 prohibits an unlicensed corporation from "maintain[ing] any action in any court until it has obtained such license."  O.R.C. § 1703.29(A).

In an analogous case involving a different registration statute, a defendant business entity was found to have violated the FDCPA by bringing suit using a fictitious name without having properly registered the fictitious name with the State of Ohio.  See Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 801 (S.D. Ohio 2006).  Sections 1329.01 and 1329.10(B) of the Ohio Revised Code require that a business register its fictitious name with the Ohio Secretary of State before initiating a civil action.  The district court held that "Defendants violated [§] 1692e when they commenced and maintained debt collection lawsuits in state court against the class members, even though they did not have the legal capacity to do so."  Id. at 801-02.  This case is persuasive authority that it is a violation of the FDCPA for a foreign corporation which is not licensed with the Ohio Secretary of State to maintain a court action in Ohio.

Defendants other arguments in favor of dismissal on the pleadings also fail.  First,

Defendants assert that Ohio's license requirement violates the Commerce Clause to the extent that the requirement applies to entities engaged solely in interstate commerce. However, Plaintiffs allege that MRC is engaged in the business of collecting debts in this state. Plaintiffs' allegation renders Defendants' argument inapplicable at this stage. Second, Defendants assert that Plaintiffs waived the failure to obtain license argument by not asserting it in state court. The Court does not agree. MRC voluntarily dismissed the state court action making any waiver claim doubtful. Moreover, Defendants have not established that Evans is estopped from asserting in this case the analytically distinct matter of whether MRC's conduct in filing the state court action violated the FDCPA or OCSPA. For these reasons, Defendants' motion is denied as to this claim.

### E.   Did Defendants violate of the FDCPA — 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and § 1692f — by suing Faulk on a debt discharged in bankruptcy?

Plaintiff Faulk alleges that Defendants Midland, the Javitch law firm, and its attorneys, Block and Ritz, violated the FDCPA by suing him on a debt discharged in bankruptcy. Defendants assert that a debtor like Faulk cannot assert an FDCPA claim on this theory unless a bankruptcy court first has determined that the bankruptcy discharge injunction was violated pursuant to 11 U.S.C. § 524. Faulk has not alleged in the Complaint that the bankruptcy court has made such a determination. The bankruptcy statute provides in relevant part as follows:

(a) A discharge in a case under this title--

* * * *

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

13

11 U.S.C. § 524.

In support of their dismissal argument, Defendants rely on a Second Circuit Court of Appeals decision in which the court upheld the dismissal of an FDCPA claim premised on a creditor's alleged violation of a bankruptcy discharge injunction. Yaghobi v. Robinson, 145 F. App'x 697, 699 (2d Cir. 2005). The Court held that the debtor first had to seek relief in the bankruptcy court for the violation of discharge injunction itself before the debtor could bring suit on an FDCPA claim in the district court. Id. In fact, the court refused to express an opinion on whether an FDCPA claim could be premised on a violation of the Bankruptcy Code. Id. "[B]ecause the bankruptcy court is the appropriate forum to determine whether a creditor has, in fact, violated a discharge order, a plaintiff debtor who, as in this case, fails to secure such a determination lacks a colorable factual basis to plead an unfair debt collection practice based only on a § 524 violation." Id.

Faulk, on the other hand, relies on a Seventh Circuit Court of Appeals decision holding that it was improper to dismiss an FDCPA claim on the basis that the Bankruptcy Code implicitly "preempted" the FDCPA "when the act alleged to transgress the FDCPA also violates the Code." Randolph v. IMBS, Inc., 368 F.3d 726, 729, 732 (7th Cir. 2004). The court noted that the statutes overlap, but are not coextensive. "The statutes overlap, each with coverage that the other lacks — the Code covers all persons, not just debt collectors, and all activities in bankruptcy; the FDCPA covers all activities by debt collectors, not just those affecting debtors in bankruptcy." Id. at 731. The Seventh Circuit held that "The Bankruptcy Code of 1986 does not work an implied repeal of the FDCPA." Id. at 732; see also In re Gunter, 334 B.R. 900, 903-05 (Bankr. S.D. Ohio 2005) (adopting Randolph analysis). But see Walls v. Wells Fargo Bank,

14

N.A., 276 F.3d 502, 511 (9th Cir. 2002) ("Because Walls's remedy for violation of § 524 no matter how cast lies in the Bankruptcy Code, her simultaneous FDCPA claim is precluded.")

This Court adopts the approach of the Seventh Circuit in this matter.  Plaintiff Faulk is not seeking to hold Defendants in contempt for violation of the bankruptcy discharge order. Rather, he seeks to establish only FDCPA liability, a cause of action which presumably affords Faulk with his preferred remedy.  See Drnavich v. Cavalry Portfolio Serv., LLC, No. Civ. 05-1022, 2005 WL 2406030, at *1-2 (D. Minn. Sept. 29, 2005) (denying dismissal of FDCPA claim premised on violation of bankruptcy discharge order and noting that plaintiff chose her preferred remedy); Burkhalter v. Lindquist & Trudeau, Inc., No. 4:04CV1803, 2005 WL 1983809, at *1-2 (E.D. Mo. Aug. 16, 2005) (denying dismissal of FDCPA claim because the Bankruptcy Code did not provide an exclusive remedy).  The claim will not be dismissed at the pleadings stage.

### F.    Did Defendants violate the OCSPA — Ohio Revised Code §§ 1345.02 and 1345.03 — by the above-stated conduct?

Plaintiffs allege violations of the OCSPA by means of the above-described conduct. Defendants move to dismiss the OCSPA claims in their entirety.  The OCSPA prohibits a "supplier" from committing "an unfair or deceptive act or practice" or an "unconscionable act or practice" in connection with a "consumer transaction."  O.R.C. §§ 1345.02(A), 1345.03(A).  The Court will examine each of Defendants' arguments for dismissal of the OCSPA claims in turn.

Defendants rely on the fact that Plaintiffs did not explicitly allege in the Complaint that Defendants were "suppliers" nor that they engaged in "consumer transactions."  However, Plaintiffs did allege that they are "consumers as defined in the . . . OCSPA" and that Defendants "engage in the regular practice of collecting debts from consumers using the mails and the telephone and/or regularly attempt to collect consumer debts alleged to be due to another."

15

(Doc. 4 ¶¶ 2, 7.)  Under Ohio law, creditors or agencies who regularly engage in the practice of collecting consumer debts are suppliers engaged in consumer transactions.  See Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 809 (S.D. Ohio 2006); Delawder v. Platinum Fin. Servs. Corp., 443 F. Supp. 2d 942, 952 (S.D. Ohio 2005); Celebrezze v. United Research, Inc., 19 Ohio App. 3d 49, 50, 482 N.E.2d 1260 (1984).  Defendants will not be dismissed on the basis that Plaintiffs have insufficiently pleaded that Defendants are suppliers engaged in consumer transactions.[2]

Defendants also argue that Plaintiffs' OCSPA claims fail as a matter of law because Defendants' conduct in filing the state court actions was permitted by federal law and state law. The OCSPA exempts from its purview "[a]n act or practice required or specifically permitted by or under federal law, or by or under other sections of the Revised Code . . . ."  O.R.C. § 1345.12(A).  Defendants assert that filing suit was authorized by Ohio law and that process of serving summons of suit is required by constitutional due process.

Defendants' proposed interpretation and application of § 1345.12(A) is too broad.  "The [O]CSPA is a remedial law and must be construed in favor of the consumer."  Whitaker v. M.T. Automotive, Inc., 111 Ohio St. 3d 177, 185, 855 N.E.2d 825 (2006).  Defendants have not identified a federal or state law which required or which *specifically* permitted them to file debt collection suits in state court for money loaned on debts which were either (1) owed by the

---

[2] Defendants expand upon this argument in their reply brief and contend for the first time that recent legislation enacted by the Ohio legislature should restrict the meaning of the term "supplier" in the OCSPA.  (Doc. 22 at 16-18.)  Again, the Court will not consider arguments raised in a reply brief to which Plaintiffs did not have an opportunity to respond.  See American Trim, L.L.C. v. Oracle Corp., 383 F.3d 462, 477 (6th Cir. 2004); Guzman v. Denny's Inc., 40 F. Supp. 2d 930, 937 (S.D. Ohio 1999).

alleged debtor's spouse or (2) discharged in bankruptcy.  The Court will not grant Defendants judgment on the pleadings on the OCSPA claims.

**G.      Can the Individual Defendants be held liable as a matter of law?**

Plaintiffs have asserted claims against three attorneys, Block, Shelley, and Ritz, employed by the Javitch law firm.  Plaintiffs allege that each is engaged "in the regular practice of collecting debts from consumers using the mails and telephone and/or regularly attempt consumer debts alleged to be due another."  (Doc. 4 ¶ 7.)  Block and Shelley signed the state court complaint against Evans.  Block and Ritz signed the state court complaint against Faulk.  Defendants contend that Block, Shelley, and Ritz cannot be held liable as a matter of law under the FDCPA.

The Supreme Court has held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995).  Judge Barrett summarized the development of law in this area after Heintz as follows:

> For a court to find that an attorney or law firm "regularly" collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999).  Factors to be considered in this analysis include: (1) the volume of the attorney's collection activities; (2) the frequent use of a particular debt collection document or letter; (3) whether there exists a steady relationship between the attorney and the collection agency or creditor he or she represented; (4) what portion of the overall caseload debt collection cases constitute; (5) and what percentage of revenues derive from debt collection activities.  Id.  Even where debt collection takes up a minor portion of a law practice, "debt collector" liability may lie where the defendant has an "ongoing relationship" with a client whose activities substantially involve debt collection.

Corbett v. Rex Wolfgang, No. 1:05cv583, 2006 WL 3231257, *1 (S.D. Ohio Nov. 6, 2006).

17

Plaintiffs' allegations in the Complaint against Block, Shelley, and Ritz are sufficient under the standards set forth in <u>Corbett</u> to withstand the dismissal motion.  Defendants' dismissal motion is denied as to the claims against the individual Defendants.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Severance of Misjoined Claims of Plaintiff Evans and Plaintiff Faulk (doc. 10) is **DENIED** and Defendants' Motion for Judgment on the Pleadings (doc. 9) is **GRANTED IN PART AND DENIED IN PART**.  The Motion for Judgment is granted only insofar as the Court dismisses Plaintiffs' claims that Defendants violated the FDCPA by falsely characterizing the alleged debts as being "for money loaned.".

IT IS SO ORDERED.

_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge